IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

LARRY PENNYAMON                    *

    Plaintiff,                        *

       v.                           * CIVIL ACTION NO. 2:03-CV-496-T

BETTY TEAGUE, *et al.*,            *

    Defendants.                       *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Larry Pennyamon ["Pennyamon"], asserts a due process challenge to his prison classification as a sex offender.[1] Pennyamon contends that defendants violated his rights under the Due Process Clause of the Fourteenth Amendment by failing to provide him with adequate notice before classifying him as a sex offender. Pennyamon further alleges that defendants' reliance on false information to classify him as a sex offender also denied him due process.

Named as defendants are Paul Whaley ["Whaley"], Director of Classification ; Betty Teague ["Teague"], Director of Records; the Classification Administration of Draper Correctional Facility ["Draper"]; the Alabama Department of Corrections ["ADOC"]; and the Alabama Board of Pardons and Paroles ["the Board"]. Pennyamon seeks money damages

---

[1]Plaintiff was incarcerated at the Draper Correctional Facility located in Elmore, Alabama, when he filed this complaint. He has since been released from prison.

and requests that the false information be expunged from his institutional records.

Defendants filed special reports and supporting evidentiary materials addressing the plaintiff's claims for relief. In accordance with the orders entered herein, the court deems it appropriate to treat these special reports as motions for summary judgment. This case is now pending on defendants' motions for summary judgment. Upon consideration of such motions, the evidentiary materials filed in support thereof, and the responses filed by the plaintiff, the court concludes that defendants' motions for summary judgment should be granted.

## I.   FACTS

Following trial by jury in the Lee County Circuit Court, Pennyamon was found guilty of first degree burglary on 9 September 1992. He received a sixteen year sentence for this conviction. On 20 October 1992 the Board prepared a Report of Investigation with respect to his offense. This report provided the following details:

> On 5-8-92, the Opelika Police Dept. received a complaint from Clarice Annette Jefferson of 1622 North Railroad Avenue, Opelika, Lee County, Alabama. Jefferson reported that she had been raped by Larry PENNYAMON, who [sic] she has known for six years or more. Jefferson told Officers that she had received a ride from PENNYAMON at approximately 1:30 a.m., the morning of May 8, 1992. Jefferson stated she and PENNYAMON rode around until about 2:30 a.m. Jefferson stated she told PENNYAMON she needed to get home, because she had to go to work the next morning. Jefferson said when they got to her residence and she was unlocking her front door, PENNYAMON pushed her from the back and into her residence, breaking the key off in the front door. Jefferson state she attempted to get away from PENNYAMON, but was overpowered by the size and strength of him. PENNYAMON then used physical force, forcing her into her bedroom where she was raped. Jefferson stated that at one point, she screamed and PENNYAMON told her "if you don't shut up, I'll pull out my knife and stick you." Jefferson stated

PENNYAMON moved his hand towards his pocket as if he was going to get his knife.  Jefferson was transported to the East Alabama Medical Center by the Police Officers.

The Detectives with the Opelika Police Dept. met with the Officers and Jefferson at the East Alabama Medical Center in reference to the complaint. The Detectives photographed facial injuries that Jefferson had received during her struggle with PENNYAMON.  Jefferson did state that PENNYAMON did not ejaculate inside her and that he pulled his penis out, ejaculating on the bed sheets.  Jefferson stated PENNYAMON took the sheets and pillowcases with him when he left.  Jefferson told the Detectives that PENNYAMON told her to take a bath, which she did not do.  The Detectives asked Jefferson, if she had had sex prior to being raped and she stated she had intercourse on the morning of May 7, 1992, with her boyfriend.

On May 9, 1992, Detective Dan Smith met with Jefferson at the Opelika Police Dept. to give her statement.

On May 11, 1992, Jefferson signed warrants on Larry PENNYAMON charging him with Rape, I, and Burglary, I.    On that same date, PENNYAMON was arrested on the signed warrants by Officer of the Opelika Police Dept.  PENNYAMON was advised of his Miranda Rights and signed a form indicating his understanding of those Rights, but wanted to talk with an attorney before making a statement.

On May 12, 1992, Larry PENNYAMON was transported to the Lee Co. Sheriff's Dept. Jail.

(Doc. No. 11, Exh. F.)

Plaintiff's statement in the Report of Investigation indicated that he and Jefferson made several drug buys on the day the offense occurred.  After each purchase, Pennyamon stated that he and Jefferson would return to Jefferson's house to smoke the drugs. Pennyamon and Jefferson subsequently drove to a friend's house where Jefferson could "sell her body."

Eventually Pennyamon and Jefferson drove back to Opelika, stopping at one point

along a dirt rode to have sex.  Afterwards, Pennyamon stated that Jefferson insisted on driving and they returned to Opelika and drove around looking for more drugs.  They later returned to Jefferson's house at which time they spotted her boyfriend.  Jefferson jumped out of the car and ran home.  (*Id*.)

When Pennyamon filed this action, his classification status was based on a re-classification proceeding held in April 2001.  According to the evidentiary material before the court, Correctional Officer Michael Blackmon attempted to serve Pennyamon on 20 March 2001 with notice of reclassification, informing him that a reclassification hearing would be conducted to determine whether he should be classified as a sex offender.[2]  (Doc. No. 11, Exh. D.)  Officer Blackmon noted on the form that Pennyamon refused to sign the document indicating his receipt of the notice.  (*Id*.)  The notice informed him of the following:

> NOTICE OF CLASSIFICATION: This is to inform you that on the 3rd day of April, 2001, you will meet a classification team to determine if you should be classified as a Sex Offender under the Department of Corrections' classification guidelines. According to the Dept. of Corrections Classification Manual on page 29, paragraph 10/b, inmates whose convictions may be for other offenses, (past or present) but which include details indicating that a sex offense occurred in the commission of the crime for which the inmate was convicted may be considered a possible sex offender for the purpose of classification.  On your current Burglary I case, you forced yourself into your children's Aunt's home and raped her.

(*Id*.)  The notice also advised Pennyamon that he would "be given an opportunity to be heard and to present written documentary evidence." (*Id*.)

---

[2] In *Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999), the Court determined that a prisoner who is not convicted of a sex crime is entitled to due process before being classified as a sex offender.

4

On 3 April 2001, a reclassification hearing was conducted.  The hearing officer presented details from the Report of Investigation as evidence, and specifically, the victim's statement to the Opelika Police Department that Pennyamon pushed his way into her house, forced her into her bedroom, and raped her.  Pennyamon was asked if he had anything to say on his behalf or by way of explanation.  He replied "I don't agree with the statement." Pennyamon and the Hearing Officer were given the opportunity to ask questions, but both declined.

When the hearing was completed, the reclassification team recommended that Pennyamon be classified as a sex offender "based on the evidence presented to the board and according to the classification manul."   On 10 April 2001, the Central Review Board approved the recommendation finding that Pennyamon should be considered a sex offender for internal classification purposes.  (Doc. No. 11, Exhs. C, E.)

## II.   STATUTE OF LIMITATIONS

Pennyamon alleges that  the violations about which he complains occurred from November 1992 through the filing of the instant action on 8 May 2003.  His due process challenge to the classification proceedings which occurred before 8 May 2001  and which resulted in his classification and/or designation as a sex offender is barred by the statute of limitations. (*See* Doc. No. 1, Doc. No. 18, Exhs. A-G.)

Pennyamon filed this complaint on 8 May 2003.  Any constitutional violations he seeks to challenge regarding classification decisions made prior to 8 May 2001 are barred by

the statute of limitations.  While there is no express period of limitations in the Civil Rights

Act, federal courts generally apply the most appropriate state statute of limitations to a claim

filed under 42 U.S.C. § 1983.  *See Wilson v. Garcia*, 471 U.S. 261 (1985); *Burnett v.*

*Grattan*, 468 U.S. 42 (1984).

> Federal courts must look to state law to determine, first, what
> statute of limitations is applicable, and second, whether that
> limitations period is tolled.  *Whitson v. Baker*, 755 F.2d 1406.
> 1409 (11th Cir. 1985). . . .  Alabama law [ ] provides that the
> applicable limitations period is the one in effect when the claim
> is filed, not when the cause of action arose.  *Tyson v . Johns*
> *Manville Sales Corp.*, 399 So.2d 263, 269-70 (Ala.1981).

*Dukes v. Smitherman*, 32 F.3d 535, 537 (11th Cir. 1994).  Alabama's general two-year statute

of limitations for personal injury actions is the most applicable to the case at bar.  *Ala. Code*

§ 6-2-38(l).  *See Owens v. Okure*, 488 U.S. 235, 249-250 (1989) (the proper statute of

limitations for § 1983 actions is the forum state's general or residual statute of limitations for

personal injury actions); *see also Lufkin v. McCallum*, 956 F.2d 1104, 1105 (11th Cir. 1992).

That portion of the tolling provision which previously applied to convicted prisoners was

rescinded by the Alabama legislature on May 17, 1996.  *See Ala. Code* § 6-2-8(a) (1975, as

amended).  Consequently, the applicable statute of limitations expired on the claims arising

from Pennyamon's most recent classification proceedings, which, at the latest, occurred on

10 April 2001.  When Pennyamon filed this matter on 8 May 2003, his challenge to those

classification proceedings which occurred on or before 10 April 2001 was filed

approximately one month  after the applicable  limitations period had lapsed.

Unquestionably, the statute of limitations is usually a matter which may be raised as

6

an affirmative defense.  The court notes, however, that in an action proceeding under § 1983, it may consider, *sua sponte*, affirmative  defenses that are apparent from the face of the complaint.  *Clark v. Georgia Pardons and Parole Board*, 915 F.2d 636, 640 n.2 (11th Cir. 1990); *see also Ali v. Higgs*, 892 F.2d 438 (5th Cir. 1990).  "[I]f the district court sees that an affirmative  defense  would  defeat  the  action,  a  section  1915[(e)(2)(B)(i)]  dismissal  is allowed." *Clark*, 915 F.2d at 640.

"The expiration of the statute of limitations is an affirmative defense the existence of which warrants dismissal as frivolous.  *See Franklin* [*v. State of Oregon*], 563 F. Supp. [1310] at 1330, 1332 [D.C. Or. 1983]." *Id*. at n.2.  In analyzing § 1983 cases, "the court is authorized to test the proceeding for frivolousness or maliciousness even before service of process or before the filing of the answer." *Ali*, 892 F.2d at 440.  "It necessarily follows that in the absence of . . . defendants the . . . court must evaluate the merit of the claim *sua sponte*." *Id*.

> An early determination of the merits of an IFP proceeding provides a significant benefit to courts (because it will allow them to use their scarce resources effectively and efficiently), to state officials (because it will free them from the burdens of frivolous and harassing litigation), and to prisoners (because courts will have the time, energy and inclination to give meritorious claims the attention they need and deserve). 'We must take advantage of every tool in our judicial workshop.' *Spears* [*v. McCotter*], 766 F.2d [179, 182 (5th Cir. 1985)].

*Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

Based on the facts apparent from the face of the complaint, Pennyamon has no legal basis on which to challenge classification decisions which occurred prior to 8 May 2001.

7

The statutory tolling provision is unavailing. In light of the foregoing, the court concludes that Pennyamon's challenge to those classification proceedings are barred by the applicable statute of limitations and the claims should therefore be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).  *See Clark*, 915 F.2d 636; *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989).[3]


## III.   DISCUSSION

### A.    *Standard of Review*

To survive defendants' properly supported motions for summary judgment, a plaintiff must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Consequently, when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial", summary judgment is due to be granted in favor of the moving party.  *Id*. at 322; *Barnes v. Southwest Forest Industries*, 814 F.2d 607 (11th Cir. 1987).

Moreover, if all of the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper.  *Celotex Corp*., 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).   Although factual inferences

---

[3]Although *Neitzke* interpreted the provisions of 28 U.S.C. § 1915(d), the predecessor to § 1915(e)(2), the analysis contained therein remains applicable to the directives contained in the present statute.

must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to a liberal interpretation by the courts, a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a material fact in order to avert summary judgment. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

**B.      The State Agencies**

Neither the ADOC nor the Board is subject to suit or liability under § 1983. The Eleventh Amendment bars suit directly against a state or its agencies, regardless of the nature of relief sought. *Papasan v. Allain*, 478 U.S. 265 (1986); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984). Thus, Pennyamon's claims against the ADOC and the Board are "based on an indisputably meritless legal theory," and are, therefore, subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(i).  *See Neitzke*, 490 U.S. at 327.

**C.      The Due Process Claim**

To the extent that Pennyamon complains that his classification status as a sex offender at the time he filed his § 1983 complaint violated his due process rights, he is entitled to no relief.  Under the facts and circumstances of this case, due process entitled Pennyamon to "an informal, nonadversary evidentiary review" conducted with a design toward determining whether there was reasonable cause to classify him as a sex offender. *See Hewitt v. Helms*, 459 U.S. 460, 476-477 (1983) (requiring some notice to inmate of reason for adverse action

9

and an opportunity for him to express views).

A hearing to determine whether an inmate should be classified as a sex offender is not a criminal proceeding in which the full panoply of due process rights must be accorded. Moreover, the Constitution does not require that this informal review comport with all the procedural safeguards set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974).  *Hewitt, supra.*

 "The fundamental requisite of due process of law is the opportunity to be heard." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970).  "An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950).

The documents and records before the court show that the process afforded Pennyamon, insofar as it concerned his prison classification status at the time he filed this action, was sufficient to satisfy the requirements of due process mandated by the Constitution.  Correctional officials provided him with notice of a reclassification hearing, advised him of the conduct on which his classification as a sex offender would be based, and identified the administrative regulation applicable to his case.

Pennyamon was also provided an opportunity to be heard on this matter, but, other than disagreeing with the statement of evidence presented against him, he failed to present evidence in support of his argument that he should not be classified as a sex offender.  After reviewing the evidentiary materials, including details of the offense contained in

Pennyamon's Report of Investigation, the hearing committee recommended that he be classified as a sex offender and the Central Review Board accepted this recommendation.

In light of the foregoing, the court concludes that Pennyamon has not demonstrate that his classification as a sex offender at the time he filed the instant complaint was violative of his Fourteenth Amendment rights as the process by which he was so classified satisfied the requirements of due process.  *See Hewitt v. Helms, supra.*

### D.     The False Information Claim

Pennyamon complains that the defendants relied on erroneous information to classify him as a sex offender, thereby defeating his eligibility for favorable prison programs. Pennyamon states that he was convicted of burglary, not a sex offense; thus, the defendants' conduct in  classifying him as a sex offender violated his rights protected by the Fourteenth Amendment.

 In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the court analyzed a *pro se* inmate's allegation that he was deprived of due process when prison officials used erroneous information in his prison file to deny him fair consideration for parole and minimum custody status.  Monroe alleged that presentence report information indicating that he had raped the victim of his crime was false.  The defendants admitted that the presentence information was false.  Acknowledging that he had no liberty interest in parole, Monroe nonetheless claimed a due process right to be fairly considered for parole.  He contended that the defendants' use of admittedly false information to deny him parole or minimum security classification

11

violated due process.

The *Monroe* court held that the defendants' reliance on admittedly false information to deny Monroe consideration for parole was arbitrary and capricious treatment violative of the Constitution. In *Monroe*, however, the court was careful to distinguish its holding from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir. 1982):

> Our holding today does not conflict with our earlier holding in
> *Slocum, supra*. In *Slocum*, the plaintiff, who had been denied
> parole, made the conclusory allegation that the Board must have
> relied upon erroneous information because otherwise the Board
> would surely have granted him parole. *Slocum*, 678 F.2d at 941.
> The plaintiff then sought to assert a due process right to examine
> his prison file for the alleged errors.  Unlike the instant case, in
> *Slocum* the state did not admit that it had relied upon false
> information in denying parole nor did the plaintiff present any
> evidence that his prison file even contained any false
> information. We held in *Slocum* that prisoners do not state a due
> process claim by merely asserting that erroneous information
> may have been used during their parole consideration. *Id.* at 942.
> We also determined that prisoners do not have a due process
> right to examine their prison files as part of a general fishing
> expedition in search of false information that could possibly
> exist in their files. *Id.* In the case at bar, we are confronted with
> prison authorities who admit that information contained in
> Monroe's files is false and that they relied upon such
> information, at least in part, to deny Monroe parole and to
> classify him as a sex offender. As we stated, the parole statute
> does not authorize state officials to rely on knowingly false
> information in their determinations. *Thomas [v. Sellers]*, 691
> F.2d [487] at 489 [(11th Cir. 1982)].

*Slocum* controls the disposition of the instant case.  Defendants do not admit that the report describing the details of Pennyamon's offense is false.  The report reflects that

Pennyamon unlawfully entered the victim's home, raped her, and threatened to "stick" her with a knife at one point when she screamed.   (Doc. No. 6, Exh. B).  Pennyamon's mere contention that the information contained in the report is false, without evidence of its falsity, is insufficient.[4]

Requiring a trial or hearing every time a prisoner asserted that false information was the basis of prison official's decisions would involve the court in review of a multitude of decisions which are better left to prison authorities.  *See Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) (while use of false information in a parole file can be a due process violation, prisoners cannot make a conclusory allegation regarding the use of such information as the basis of a due process claim).  Here, it is undisputed that the defendants did not rely on admittedly false information.  Consequently, Pennyamon is not entitled to  relief as a matter of law, and summary judgment is due to be granted in favor of the defendants.

## IV.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motions for summary judgment (Doc. Nos. 8, 10, 11) be GRANTED;

---

[4]Summary judgment is not precluded merely because the inmate disputes the validity of the information.  In *Hewitt v. Helms*, 459 U.S. 460 (1983), the Court stated that "prison officials have broad administrative and discretionary authority over the institutions they manage and . . . lawfully incarcerated persons retain only a narrow range of protected liberty interest . . . broad discretionary authority is necessary because the administration of a prison is "at best an extraordinarily difficult undertaking," . . . and . . . to hold . . . that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Id*. at 467.

2.  Judgment be ENTERED in favor of the defendants and against the plaintiff,

3.  This case be DISMISSED with prejudice; and

4.  The costs of this proceeding be taxed against the plaintiff.

 It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on of before **28 July 2005**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th  Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 14th day of July, 2005.


/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
 UNITED STATES MAGISTRATE JUDGE